UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:10-cv-00747 |
| ) | |
| EBONY WOOD IN VARIOUS FORMS, ) | Judge William J. Haynes |
| ) | |
| Defendant. ) | |

**CLAIMANT GIBSON GUITAR CORP.'S REPLY
IN FURTHER SUPPORT OF MOTION TO DISMISS**

Claimant, Gibson Guitar Corp. ("Gibson"), respectfully replies to the United States of America's (the "Government") response to Gibson's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and Supplemental Rule G(2)(f).

**INTRODUCTION**

The Government does not dispute the key facts pertinent to this motion. It concedes that the wood products it seized from Gibson were ebony "fingerboards." It concedes that, under Madagascar law, ebony fingerboards constitute "finished" products. Finally, it acknowledges that, under the same Madagascar law, the exportation of "finished" wood products is legal. Under these simple facts – about which there is no legitimate dispute – the Government's forfeiture action fails as a matter of law and must be dismissed.

Indeed, rather than dispute these facts, the Government's response amounts to little more than obfuscation and delay. First, the Government seeks to re-characterize the "fingerboards" it seized as "sawn timber." Calling "fingerboards" by another name does not a dispute make.

Even if it did, "sawn timber" is a meaningless term under Madagascar law. However the American government may choose to label them, there is no dispute that Madagascar officials deem fingerboards to be "finished" under Madagascar law. Accordingly, the Government's claim necessarily fails.

Second, the Government argues that fingerboards cannot be "finished" because Gibson intended to alter them to fit on guitars. Again, however, the Government misses the point. Madagascar law explicitly classifies fingerboards as "finished" and legal for export. Gibson's plans for the fingerboards are entirely irrelevant.

Finally, the Government seeks to delay its "full response" so that it can conduct discovery to determine whether or not to challenge standing. The Government's special interrogatories, however, are untimely under Supplemental Rule G(6)(a). Even so, Gibson has again reiterated under oath that it owns the fingerboards at issue and, thus, has standing to claim ownership. The Government cannot seriously contend that Gibson has no standing to assert ownership of the fingerboards the Government admittedly seized from Gibson's manufacturing facilities. This is little more than an attempt by the Government to delay the dismissal of a flawed forfeiture claim.

Accordingly, Gibson requests that the Court grant its motion to dismiss, order the return of its property, and award Gibson its reasonable attorney's fees and other litigation costs pursuant to 28 U.S.C. § 2465(b).

## ARGUMENT

**1.    The Government's forfeiture complaint must meet a heightened pleading standard.**

As a threshold point, the Government's response suggests that its burden of pleading is lower in a forfeiture action than in an ordinary civil case. In fact, the rules impose a **higher**

burden in a forfeiture action to prevent the Government from seizing and holding property to which it has no valid claim. See authorities cited in Gibson Memo., Docket Entry No. 8, pages 8-9.

Of course, regardless of the pleading standard, the Government has no claim if the facts pled create an insurmountable bar to relief. United States v. Uvalde Consol. Indep. Sch. Dist., 625 F.2d 547, 549 n.1 (5th Cir. 1980). Here, the facts pled, if true, establish that the wood products at issue were legally exported under Madagascar law. Hence, the Government has no claim.

**2.** **The Government admits that the seized wood products are ebony "fingerboards" and, by Madagascar law, ebony fingerboards are "finished" wood products that are legal for export.**

The Government does not – and cannot – seriously refute the pertinent facts that bar its claim.

First, there is no dispute that the wood products at issue that were seized from Gibson are fingerboards or guitars or guitar necks with fingerboards attached: the Government agents who seized those products **swore** to a property receipt that described them as such, and the Government incorporated this verified receipt into its verified complaint and sworn affidavit. (See Docket Entry No. 3, Seiler Aff., ¶ 5(a) and (b); Docket Entry No. 1-1, Attachment 1 to Verified Complaint; Docket Entry No. 3-1, page 13.) Indeed, the photographic evidence – which the Government attached to its supplemental discovery requests in this case – demonstrates that **all** the products that were seized were fingerboards (or guitars or guitar necks containing fingerboards).[1]

---

[1] Attached as Exhibit A to this reply are the Government's photographs showing that all the products are fingerboards cut to precise specifications prior to export from Madagascar.

Second, there is no dispute that Madagascar Interministerial Order 16.030/2006 classifies ebony fingerboards as "finished" products that can be exported from Madagascar; nor does the Government dispute that the Madagascar Government authorized Theodor Nagel to export finished ebony products.[2] Indeed, Interministerial Order 16.030/2006 expressly states that "finished products" include parts for musical instruments, such as "piano keys" and guitar "fingerboards":

> Article 6: Finished products include all woods that have been manufactured, transformed into a definitive use and can no longer be modified such as:
>
> \* \* \*
>
> <u>Musical instruments:</u> piano keys, fingerboard, etc.

(Docket Entry No. 8-1, page 3.)

The fingerboards seized in this case, therefore, were legally exported under Madagascar law, and the Government has no claim for forfeiture. (<u>See</u> Docket Entry No. 3, Seiler Aff., ¶ 5(a) and (b) and Attachment 1 to Verified Complaint.)

3. **<u>None of the Government's arguments saves the complaint.</u>**

In an effort to avoid dismissal, the Government makes three arguments: (a) the wood products at issue are "sawn timber"; (b) the wood products cannot be "finished" because they must be attached to other parts to form a guitar; and (c) the Government needs time to conduct discovery regarding standing. None of these arguments has merit.

---

[2] The Government's response makes a broad statement that "Thunam could not legally export any of his wood supply to Nagel." The Government's actual pleadings, however, expressly acknowledge that the Madagascar Government authorized Thunam to export finished ebony products, which, by legal definition, includes fingerboards. (Docket Entry 3, Affidavit of Kevin Seiler, ¶ 18.) The Government cannot take positions in its response that contradict both its own pleadings and the pertinent Madagascar law, which allows exports of finished ebony products, expressly including fingerboards.

### *(a) "Sawn timber" is not a category of wood for export purposes under Madagascar law.*

Because Madagascar law admittedly permits export of fingerboards, the Government first attempts to re-label the fingerboards at issue as "sawn timber." This characterization contradicts the Government's own pleadings and is meaningless under Madagascar law.

First, as noted above, the Government has already acknowledged that the wood products it seized from Gibson were fingerboards and guitars and guitar necks containing fingerboards. (<u>See</u> Docket Entry No. 3, Seiler Aff., ¶ 5(a) and (b); Docket Entry No. 1-1, Attachment 1 to Verified Complaint; Docket Entry No. 3-1, page 13.) The Government's own photographs evidence the same. (Exhibit A.) Accordingly, there is no basis – other than obfuscation or delay – for arguing that the wood products at issue are anything other than fingerboards.

Even if the Government could credibly re-characterize the wood as "sawn timber," such characterization has little meaning. Virtually all wood except for a growing tree is "sawn timber." Further, "sawn timber" is not a classification for wood products under Madagascar law. The relevant inquiry is how the Madagascar government characterizes ebony fingerboards, and Madagascar law explicitly characterizes ebony fingerboards as "finished." Interministerial Order 16.030/2006. Based on that fact alone, the Government's claim must be dismissed.

### *(b) Fingerboards are "finished" wood products even if they are cut or fitted after leaving Madagascar.*

The Government next argues that the fingerboards it seized cannot be "finished" because Gibson was continuing to modify them to manufacture musical instruments. The Government apparently relies upon the language in Interministerial Order No. 16.030/2006 that states that a "finished" product includes all woods that "can no longer be modified." (Docket Entry 8-1, page 3, Article 6.)

The Government's interpretation of this foreign Order contradicts both common sense and Madagascar law. First, the language in Interministerial Order No. 16.030/2006 stating that a "finished" product cannot be further modified simply means that the wood products are cut and intended for a definitive purpose before they leave Madagascar. The complete phrase in the Order makes this clear: "finished" wood products include "woods that have been manufactured/moulded, transformed into a definitive use and can no longer be modified." (Docket Entry No. 8-1, page 3, Article 6.) Indeed, because fingerboards have no use or purpose except when attached to a guitar, the Government's interpretation of Madagascar law would effectively make it illegal to export any ebony fingerboards from Madagascar unless and until those fingerboards had been attached and manufactured into a finished guitar. Plainly, this is not the case nor what Madagascar authorities intended, as the law expressly allows the export of ebony fingerboards separate and apart from the fully-manufactured guitar.

Here, the ebony wood at issue was processed in Madagascar for use as fingerboards and cut to precise specifications of 521 x 70 x 9 mm and 508 x 70 x 9 mm. (Docket Entry No. 5, page 2.) The mere fact that they might be attached to guitar necks after they leave Madagascar is not meaningful. They are, therefore, "finished" goods.

Second, the other provisions of Interministerial Order No. 16.030/2006 undermine the Government's position that, because they are further processed after leaving Madagascar, fingerboards are not "finished" products under Madagascar law. Virtually every item that is listed in Interministerial Order No. 16.030/2006 as an example of a "finished" wood product is something that must be later cut, fitted, molded, stained, painted, or otherwise adjusted for final consumer use. (Docket Entry No. 8-1, page 3.) For instance, the Order states that "construction materials" are "finished." (Id.) No colorable argument exists that construction materials are not

6
Case 3:10-cv-00747   Document 17   Filed 12/14/10   Page 6 of 11 PageID #: 201

processed during final use. The list of items expressly includes the following: "window pane, baluster, window box, casing/forms, stairs, grooves, molding, flooring, border wood, baseboards, doors, banisters, guard rail . . . ." (Id.) Common sense indicates that molding, flooring, border wood, baseboards, doors, and banisters must be cut, fitted, painted, and/or stained for final use. Likewise, the examples include "pre-fabricated buildings in wood," which includes "siding." Siding must be cut and fitted for final use. For musical instruments, the other example is "piano keys," which, like fingerboards, must be combined with other parts and fitted and installed for final use.

Ultimately, the wood products at issue were finished "fingerboards" when they left Madagascar. Thunam had authority to export them, and the Government has no claim.

*(c) The Government's untimely interrogatories are not a basis to delay dismissal of this action.*

Finally, the Government seeks to delay resolution of this motion so that it can conduct needless discovery regarding Gibson's standing to contest forfeiture. There are two main problems with this argument.

First, the Government's special interrogatories were untimely under the appropriate rules and, therefore, are barred. Supplemental Rule G(6)(a) requires the Government to serve "Special Interrogatories" concerning standing no later than 21 days after the filing of a motion to dismiss. Gibson filed and served its motion to dismiss on October 14, 2010. (Docket Entry No. 7.) The 21 day deadline for the Government to serve special interrogatories expired on November 4, 2010. The Government did not serve its interrogatories until November 16, 2010. (Docket Entry

No. 13.1). Accordingly, the Government's interrogatories are untimely and provide no basis to delay dismissal.[3]

Second, and more importantly, Gibson has provided, and the Government has in hand, undisputed evidence of Gibson's ownership of the fingerboards that the Government seized, and no legitimate need exists for further discovery on the issue. Specifically, on September 23, 2010, Gibson filed and served a claim that satisfies all four of the requirements for a claim set forth in Supplemental Rule (G)(5)(a)(i). (Docket Entry No. 4.) Bruce Mitchell, Gibson's General Counsel, swore to the claim under penalty of perjury, and the claim clearly states that Gibson owns the property that the Government admittedly seized from Gibson's manufacturing facilities. (Docket Entry No. 4, ¶¶ 1, 3.)

Nonetheless, Gibson is providing herewith another declaration to reiterate "the claimant's identity" and the claimant's "relationship to the defendant property," which are the only two discoverable topics under Supplemental Rule G(6)(a). (See Declaration of Bruce Mitchell filed concurrently herewith.) The Declaration of Bruce Mitchell, Gibson's General Counsel, explains that attorneys in this case are authorized by Gibson to take the action they have taken, and that Gibson is a Delaware corporation with its headquarters and certain of its manufacturing facilities that manufacture guitars in Tennessee. (Id. ¶¶ 1-2.) The declaration again reiterates under oath that Gibson owns the fingerboards and guitars at issue. (Id. ¶ 3.) Gibson also notes that the answer filed by Nagel agrees that the fingerboards taken from the Gibson facility belong to Gibson. (Docket Entry No. 9, page 3.)

---

[3] Although the Government asked for an extension of time to file a response to the motion to dismiss, which Gibson agreed to, the Government did not request an extension of time to serve interrogatories. (Docket Entry No. 10.) Gibson did not agree to extend the deadline for propounding discovery and, under the circumstances here, would not have done so even if asked, particularly given that Gibson had already offered to produce any relevant information regarding standing as early as October 29, 2010 (see Exhibit B).

It may be worth noting that the Government had the opportunity to obtain any additional information regarding standing it reasonably believed it needed before filing its response. By letter dated October 29, 2010—19 days before the Government's response was due—Gibson's counsel offered to provide additional proof of standing to the Government if the Government considered standing a legitimate issue. (Exhibit B.) The Government did not answer the letter, did not call counsel to discuss the issue, and did not issue Special Interrogatories before the deadline for doing so. In any event, Gibson has produced more than 40,000 pages of documents to the Government pursuant to a subpoena, and the Government seized many other documents when executing its search warrant in November 2009. There does not appear to be any good reason that the Government needs any additional information.

In short, the Government has no practical need to seek additional discovery concerning standing. The Government knows that it seized the wood products at issue from Gibson's manufacturing facility and that the wood products were actually in the process of being used by Gibson to create guitars to sell to consumers. Indeed, the Government's entire case is premised upon its allegation that Gibson is the owner of the shipments from Nagel. Gibson has sworn that it owns the fingerboards the Government seized. No legitimate dispute exists concerning Gibson's standing to assert a claim in this matter, nor is there any basis to dispute that, after this matter is dismissed, the wood products should be returned to Gibson. [4]

---

[4] In truth, most of the Government's "Special Interrogatories" have nothing to do with standing and serve no legitimate purpose at all. For instance, the Government seems to challenge whether counsel of record in this matter actually represents Gibson: "Provide the specific facts and basis upon which Timothy Harvey [Gibson's counsel of record] and Bruce Mitchel [sic] [Gibson's general counsel] have the authority to file a claim in this forfeiture action on behalf of Gibson." (Government's Special Interrogatories, Request 1.M.) No reason exists to delay dismissal for such requests.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Gibson's original memorandum, Gibson respectfully requests that the Court grant its motion and dismiss the Government's Verified Complaint *in Rem* with prejudice under Federal Rules of Civil Procedure 12(b)(6) and Supplemental Rule G(2)(f). Gibson further requests return of its seized property, an award of its reasonable attorney fees and other litigation costs under 28 U.S.C. § 2465(b), and all other appropriate relief.

Respectfully submitted,

s/ Steven A. Riley
Steven A. Riley (BPR # 6258)
Tim Harvey (BPR # 021509)
W. Russell Taber, III (BPR # 24741)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37202
(615) 320-3700 – telephone
(615) 320- 3737 – facsimile
sriley@rwjplc.com
tharvey@rwjplc.com
rtaber@rwjplc.com

*Attorneys for Gibson Guitar Corp.*

## CERTIFICATE OF SERVICE

I certify that, on December 10, 2010, a true and correct copy of the foregoing has been served upon the following Filing Users through the Court's Electronic Filing System:

Jerry E. Martin
United States Attorney for the
Middle District of Tennessee
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
jerry.martin2@usdoj.gov

Debra Teufel Phillips
United States Attorney for the
Middle District of Tennessee
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
deb.phillips@usdoj.gov

*Attorneys for the United States of America*


Alexander Fardon
Harwell, Howard, Hyne, Gabbert, and Manner
315 Deaderick Street, Suite 1800
Nashville, TN 37238-1800
daf@h3gm.com

*Attorney for Theodor Nagel GMBH & Co KG*


                                              s/ Steven A. Riley