UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. 3:10cv00747 |
| v. | ) | |
| | ) | JUDGE HAYNES |
| | ) | |
| EBONY WOOD IN VARIOUS FORMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF FACTS AND LAW

**INTRODUCTION:**

Gibson has objected to the late-served interrogatories and would like this court to rule on Gibson's Motion to Dismiss. The government requests that this honorable court allow service of the Special Interrogatories *Nunc Pro Tunc* because standing is a threshold issue in this matter, Gibson has not asserted prejudice (nor is there any), Gibson has refused to provide the documents it alleged are in support of its claim, the delay in service of the interrogatories was minimal, and the government agent was out of the country and (had the government read the Rule correctly the government would have filed a well-taken motion to extend the allowable time to serve the Special Interrogatories.

**FACTS:**

On November 17, 2009, a criminal search and seizure warrant was served on Gibson Guitar Corp ("Gibson"). (Exhibit 1: Seiler Affidavit ¶ 4).

The Defendant Property sought for seizure in the above styled action ("Civil Forfeiture

Action") was seized (along with other items) for evidence in an ongoing criminal investigation. (Exhibit 1: Seiler Affidavit, ¶ 5). Administrative forfeiture proceedings were begun as to the Defendant Property. (Exhibit 1: Seiler Affidavit, ¶ 5). Gibson filed a claim stating that it was the owner of the Defendant Property, and that it "has provided the Government through Department of Justice attorney Elinor Colbourn with documents supporting its claim regarding its ownership". (Exhibit 1: Seiler Affidavit ¶ 7; Exhibit 2: Administrative Claim). Elinor Colbourn is a Senior Trial Attorney in the Environmental Crimes Section, Environment and Natural Resources Division of the United States Department of Justice Criminal Division in Washington D.C. (Exhibit 1: Seiler Affidavit ¶ 3). No subpoenas have been issued in the Civil Forfeiture Action. (Exhibit 1: Seiler Affidavit ¶ 3).

As a result of the claim in the administrative proceeding, the Asset Forfeiture unit of the civil division of the United States Attorney's Office, Middle District of Tennessee, initiated this civil judicial forfeiture action seeking the forfeiture of the Defendant Property by filing a Civil Forfeiture Complaint. (Exhibit 1: Seiler Affidavit, ¶ 8; D.E. 1: Verified Claim). Elinor Colbourn is in the criminal division in Washington D.C. and is not assigned to this civil forfeiture action. (Exhibit 1: Seiler Affidavit ¶ 3).

On August 26, 2010, Claimant Gibson Guitar Corp. ("Gibson") was notified of this Civil Forfeiture Action and was advised that its Claim and Answer must be served upon the undersigned Assistant United States Attorney and must follow the procedure set forth in Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure. (Exhibit 3: Notice).

On September 23, Gibson filed its Verified Claim and stated that it had provided the

government through the Department of Justice attorney Elinor Colbourn - an attorney in another Division and in another state- with documents supporting its claim of ownership; Gibson further acknowledged that Gibson's Claim must be submitted to the undersigned attorney. (D.E. 4: Verified Claim, ¶¶ 3,4).

On October 14, 2010, Gibson filed its motion to dismiss. (D.E. 8: Motion). The response was due twenty-one (21) days later on November 4, 2010. (L.R 7.01)

In an attempt to determine Gibson's standing to file a claim - the undersigned sent a letter to Gibson on October 15, 2010 advising Gibson that documents submitted to Elinor Colbourn do not constitute service on the designated government attorney pursuant to Supplemental Rule G(5) and requesting that Gibson forward any documents supporting its claim of ownership to the undersigned. (Exhibit 4: October 15, 2010 letter).

Two weeks later on October 29, 2010, Gibson responded to the Government' October 15, 2010 letter and stated that although the 40,000 documents (provided to Elinor Colbourn in the ongoing criminal investigation) were referenced in Gibson's claim in the Civil Forfeiture Action, the documents were not essential to the claim nor required under Supplemental Rule G(5). (D.E. 14-3: October 29, 2010 letter), and has refused to provide the documents. Thus Gibson's claim to the Defendant Property solely relies on its unsupported statement that it is the "owner" of the Defendant Property.

The week of November 2, 2010, the undersigned was out of the state on work-related matters. However, drafts of the government's Special Interrogatories and the response to the motion to dismiss and the Special Interrogatories were prepared. (Exhibit 5: Note). The drafts were completed and only required the presence of the agent to finalize and select photographs to attach to the Special

Interrogatories for the convenience of Gibson. (Exhibit 6: Special Interrogatories, No. 2). Attempts were made to get in touch with Agent Seiler in order to respond to the Motion to Dismiss and to serve Special Interrogatories, but from November 1, 2010 through Friday, November 12, 2010, Agent Seiler was on leave for a trip out of the country. (Exhibit 1: Seiler Affidavit ¶ 10),

On November 3, 2010, Gibson agreed (via conversations with a contract paralegal in the United States Attorney's Office) to a short extension of time for the Government to respond to Gibson's Motion to Dismiss until November 18, 2010. (D.E. 10: Joint Notice of Agreement). A paralegal assigned to this matter noted on the prepared interrogatories that the Special Interrogatories were not sent because "there was a Joint Agreement to extend time to file Response filed on 11/3/10. AHM" (Exhibit 5: Note).

The undersigned has now realized that pursuant to the language of Rule G(6)(a), this continuance did not affect the date by which the Special Interrogatories were required to be served upon Gibson, which were ultimately served twelve days late on November 16, 2010. (D.E.19-1: Letter with attached Special Interrogatories).

On December 10, 2010, Gibson objected to the Interrogatories as (1) untimely; (2) outside the scope of Rule G(6)(a) - which limits the interrogatories to the claimant's identity and relationship to the defendant property; and (3) calculated to harass, not relevant or reasonably calculated to lead to the discovery of admissible evidence, overly broad, unduly burdensome, vague and ambiguous; (4) previously produced to another agency in the government; and (5) a general objection to privileged documents. (Exhibit 4: Response).

*The late-service is excusable neglect.*

The United States respectfully requests hat the court consider the late service of its Special Interrogatories to be excusable neglect and in an equitable determination and that they be deemed timely served *nunc pro tunc*. Factors to be balanced in making this determination are "(1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *United States v. Munoz*, 605 F.3d 359, 364 (6th Cir., 2010)(additional citations omitted).

The service of the interrogatories was not meant to delay, harass or otherwise hinder the progress of this civil lawsuit. From a remote location, and while involved in other matters, the undersigned utilized a paralegal to accomplish the extension. The rule was simply misread. The extension to respond to the Motion to Dismiss was sought because the agent was out of the country and his input was necessary to the finalization of the Special Interrogatories and the response to the motion to dismiss. Had the rule not been misread, an agreement from Gibson would have been sought for an extension to serve the Special Interrogatories, and failing that, the undersigned would have petitioned this honorable court for a short extension. The error was not intentional, nor did it delay the proceedings or prejudice Gibson.

Gibson has not been prejudiced by the inadvertent delay, and has not so claimed. The Defendant Property is also at the heart of an ongoing criminal investigation which is anticipated will result in an indictment and which will require the use of the Defendant Property as evidence. (Exhibit 1: Seiler Affidavit ¶ 6).

Further, Gibson has knowingly refused to provide (to the designated forfeiture attorney) the

documents it initially asserted supported its claim of ownership, even though Gibson's financial interest in the Defendant Property is at issue. The documents requested in the Special Interrogatories could resolve the issue of Gibson's Statutory standing by fleshing out its bare claim, and could also resolve the issue of Gibson's Article III standing. Article III standing typically is determined based on ownership and/or possessory interest. *See United States v. $85,668.00 In U.S. Currency, 2009 WL 1507150 at *2* (D. Utah May 27, 2009)(claim, on its face, must establish both statutory and Article III standing: unequivocal claim of ownership and/or possessory interest not sufficient). Courts generally require more than "conclusory or hearsay allegations of some interest in the forfeited property." *See United States v. $100,348*, 354 F.3d 1110, 1118-19 (9th Cir. 2004). It is acknowledged that the Defendant Property was located at the Gibson manufacturing plant, but Gibson appears to be hiding records regarding its actual interest in the property, and therefore the waters are muddied, due to the contraband nature of the Defendant Property, as to Gibson's statutory standing and Article III standing.

     A bald statement of ownership with no proof of financial investment is insufficient under the facts of this case to prove standing to contest this forfeiture. The property is illegally exported and imported contraband, and as such the means and manner in which it arrived at Gibson, including whether Gibson is a bailee and thus required to name the Bailor, and the condition in which it arrived at Gibson is at issue to determine standing. If Gibson did not purchase the property and has no receipts to show said purpose, it may not have Article III standing. Thus, without more information from Gibson, the Government would be remiss in not filing a motion to strike Gibson's claim for lack of standing.

     Further, the Defendant Property is contraband, and ". . . no person may assert an ownership interest . . .in contraband or other property that is illegal to possess." 18 U.S.C. § 983(d)(4). The

Special Interrogatories seek to determine the exact nature and condition of the property when it arrived under Gibson's control and if in fact it was under Gibson's control. Gibson alleges the Defendant Property is not contraband and Gibson's answers to the Special Interrogatories are necessary to resolve that issue.

Gibson has also objected to the Interrogatories on the general ground that the interrogatories seek privileged matter, however Gibson does not identify a privilege and thus this objection fails.

***To establish the threshold issue of Claimant's standing, Claimant must have statutory standing, Article III standing and the property must not be contraband.***

Standing necessary to contest a civil forfeiture requires both statutory and Article III standing. *United States v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990). Additionally, in cases involving contraband, ". . . no person may assert an ownership interest . . .in contraband or other property that is illegal to possess." 18 U.S.C. § 983(d)(4).

Statutory standing requires compliance with the applicable rules of civil procedure. Rule G(5)(a) specifies that a forfeiture claim must, among other things identify the claimant's interest in the property and be served on the government attorney designated under Rule G(4)(b)(ii)(D); Rule G(4)(b)(ii)(D) provides that direct notice to known potential claimants must state the name of the government attorney to be served with the claim and answer - in this case, the undersigned. Supp.R,Fed.R.Civ.P G(5) and (4).(Exhibit 3: Notice). Service on criminal attorney Elinor Colbourn- not an attorney of record in this Civil Forfeiture Action - of documents in support of a claim is not a filing in support of Gibson's claim of ownership with the undersigned- the attorney of record in the civil action. Supp.R.Fed.R.Civ.Pro. G(5)(i)(B), (D) and G(4)(b)(ii).

Because Gibson had not provided the designated government attorney with the documents it alleged under oath were relied upon for its claim, its claim is deficient as to statutory standing. The remedy for this lack of statutory standing should be compliance with the rule and providing the supporting documents to the designated government attorney[1].

***The balancing factors weigh toward the allowance of service of the interrogatories nunc pro tunc.***

In balancing the factors, Gibson has not asserted any prejudice, the delay in service of the interrogatories was minimal and should have limited - if any- impact on the judicial proceedings as the undersigned preliminarily responded to Gibson's motion to dismiss, Gibson has filed a sur-reply, and the issue of standing will be litigated at some point in these proceedings due to the contraband nature of the Defendant Property. The responses to the Special Interrogatories should assist in that determination. Additionally, the reason for the late-service was solely based on the hectic schedule of the undersigned and the misreading of the Rule. Because the agent was out of the country, an extension would have been requested had the undersigned read the applicable rules regarding the service of Special Interrogatories after a Motion to Dismiss correctly.

The Undersigned requests that this Court find that the Special Interrogatories were timely served *nunc pro tunc*.

---

It should be noted that Gibson's claim of ownership would in most cases be sufficient to confer Article III standing, however because the Defendant Property is contraband, the waters are muddied.

JERRY E. MARTIN (BPR# 20193)
United States Attorney
Middle District of Tennessee


s/ Debra Teufel Phillips
Debra Teufel Phillips (BPR # 011706)
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151
Attorneys for the United States of America


**CERTIFICATE OF SERVICE**

     I hereby certify that on this 27th day of December, 2010, a copy of the foregoing Memorandum of Facts and Law was filed electronically. Notice of this filing will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, notice will be mailed by certified U.S. Mail to: was mailed by certified U.S. mail to:

Timothy G. Harvey, Esq.
Riley, Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37202

Steven Allen Riley, Esq.
Riley, Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37202

W. Russell Taber, III
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37023

                                          Debra Teufel Phillips