## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:10-cv-00747 |
| | ) | |
| EBONY WOOD IN VARIOUS FORMS, | ) | Judge William J. Haynes |
| | ) | |
| Defendant. | ) | |

## CLAIMANT GIBSON GUITAR CORP.'S RESPONSE
## TO PLAINTIFF'S MOTION TO STRIKE

Claimant, Gibson Guitar Corp. ("Gibson"), opposes the United States of America's (the "U.S. Government") motion to strike (Docket Entry 30). The U.S. Government's position transcends the heights of irony, asking the Court to "protect" Madagascar law by rejecting the official acts of the very Madagascar Government officials charged with interpreting and enforcing that law. To accept that position would be stretching the Lacey Act beyond recognition.

The circular logic supporting the U.S. Government's motion is novel and thin. The U.S. Government contends that, even though the Madagascar Government officially approved the export of the ebony wood at issue in this case, the wood is nevertheless "contraband" because someone in the United States has rejected the Madagascar Government's approval and decided that Madagascar law was violated. And because no person may lawfully possess contraband, the U.S. Government's syllogism continues, Gibson may not challenge forfeiture. In essence then, the U.S. Government argues that because it has unilaterally determined the ultimate issue in this

1

case (i.e., whether the wood is legal or contraband), Gibson may not challenge that determination. The U.S. Government's startling position smacks of something from an Orwell novel and lacks any legal support – even among the authorities cited in the U.S. Government's own brief. Gibson plainly has standing to challenge the forfeiture of ebony wood, which even the U.S. Government concedes is not contraband *per se*.

In actuality, not only is the ebony wood at issue not contraband *per se*, it is legal as a matter of law. Sworn affidavits from Madagascar officials and certified copies of Madagascar Government documents establish beyond doubt that the wood at issue was legally exported to the German supplier that sold it to Gibson. The U.S. Government faces an insurmountable burden, for it cannot overcome the undisputed proof that the wood at issue was exported with the express written approval of the Madagascar Government. The U.S. Government has no authority to overrule the official acts of the Madagascar Government in matters concerning Madagascar law.

In search of a villain to divert the Court's attention from the actual facts of the case, the U.S. Government's papers demonize Gibson's efforts to support sustainable forest management in Madagascar. Gibson devotes substantial resources to supporting legal and sustainable sources of wood, including in Madagascar. Nevertheless, the U.S. Government has selectively edited a Gibson employee's emails to create the illusion of some nefarious ulterior motive. This illusion is pure fiction.

Gibson requests that the Court deny the U.S. Government's standing motion, dismiss this unfounded forfeiture proceeding, and order the immediate return of Gibson's property. Further, in light of its inability to produce any evidence concerning the specific wood at issue, the U.S. Government should never have taken Gibson's property and has no good faith basis for

continuing to hold it. Accordingly, Gibson requests an award of all of its costs and fees pursuant to 28 U.S.C. 2465(b).

**ARGUMENT**

The U.S. Government's motion fails for at least the following reasons. First, Gibson has prudential standing because it has shown a colorable interest in wood that *might* be legal to possess. This is all that is required for purposes of prudential standing. Second, although Gibson does not bear the burden of proving the legality of export and its possession of the wood, certified documents and sworn statements from Madagascar Government officials prove that those officials inspected the wood at issue, determined that the wood at issue is "finished" as defined by Madagascar law, and authorized its export in accordance with Madagascar laws. Third, try as it might to build its case on innuendo, the U.S. Government simply has no proof that the specific wood at issue was illegally exported and certainly cannot overcome the uncontroverted proof from the Madagascar Government officials.

**1.     Gibson has prudential standing.**

The U.S. Government's only standing argument is that the ebony wood at issue is contraband and not legal to possess.[1] But ebony wood is not contraband *per se*. Sometimes it is legal; sometimes it is not. Hence, the U.S. Government must prove its case by a preponderance of evidence at trial. In the meantime, Gibson may challenge the U.S. Government's assertion that the wood is illegal.

---

[1] Gibson has shown a facially colorable interest in the property sufficient to satisfy Constitutional standing requirements. Gibson filed and served a claim that satisfies all four of the requirements for a claim set forth in Supplemental Rule (G)(5)(a)(i). (Docket Entry No. 4.) Further, Gibson has responded to interrogatories and has provided purchase orders, invoices, and evidence of wire transfers, all related to Gibson's ownership of the wood. (Docket Entry No. 31-3, page 7, response to Interrogatory No. 2, and pages 20-53.) The Government does not appear to challenge that Gibson's ownership interest creates Constitutional standing, focusing instead on "prudential" standing.

3

Contraband *per se* encompasses things that are intrinsically illegal to possess, such as illegal narcotics, counterfeit money, or sawed-off shotguns, whereas derivative contraband are things that are only illegal if tied to a specific criminal act. U.S. v. 37.29 Pounds of Semi-Precious Stones, 7 F.3d 480, 485 (6th Cir. 1993). The government does not own derivative contraband until it proves its right to the property under the applicable forfeiture statute. Id. "[T]he forfeiture of such an item is permitted only as authorized by statute and such forfeitures are subject to scrutiny for compliance with the safeguards of procedural due process." Cooper v. City of Greenwood, 904 F.2d 302, 305 (5th Cir. 1990). In this case, because forfeiture is premised upon a violation of the Lacey Act, the U.S. Government must establish a violation of foreign law before the property can be forfeited.

The U.S. Government has conceded that some ebony wood from Madagascar may be legally exported and that Madagascar Order No. 16.030/2006 specifically authorizes the exportation of ebony wood in finished form, including musical instrument parts.[2] In other words, if the U.S. Government cannot convince a jury that the wood at issue was illegally exported from Madagascar in violation of Madagascar law, it loses. Because ebony wood from Madagascar might be legal, it is not contraband *per se*, and Gibson may hold the U.S. Government to its burden.

Even the cases regarding contraband cited in the U.S. Government's own brief make it clear that the U.S. Government cannot avoid Gibson's challenge with a circular "standing" argument, but rather must prove its case or return Gibson's property. The U.S. Government

---

[2] The possible legality of Madagascar ebony presumably explains why Agent Seiler and customs officials knowingly allowed Hunter Trading to bring the wood through customs after Hunter Trading openly declared that the wood was ebony from Madagascar. See Docket Entry 3, ¶¶ 12-13.

4

relies heavily upon United States v. 2,507 Live Canary Winged Parakeets, 689 F. Supp. 1106 (S.D. Fla. 1988), for the proposition that items imported in violation of the Lacey Act are contraband that must be forfeited. (Gov. Memo. 14, 22.)  In that case, however, the U.S. Government had to meet its burden of proving a violation of foreign law at a trial on the merits after discovery. 689 F. Supp. at 1109.   The case provides no support for the proposition that a claimant with an ownership interest lacks standing to appear and to require the U.S. Government to prove its case. To the contrary, the claimant in the Parakeets did participate and actually litigated the merits.[3]   Likewise, the U.S. Government mistakenly relies upon U.S. v. 37.29 Pounds of Semi-Precious Stones, 7 F.3d 480, 485 (6th Cir. 1993). (Gov. Memo. at 14.)  In that case, the U.S. Government made the same argument that it attempts to make in this case, i.e., that the precious stones at issue were contraband per se because they were imported into the United States in violation of law.  The Sixth Circuit rejected this argument, noting that precious stones are not *per se* illegal to possess. 7 F.3d at 485.  Rather, the U.S. Government had to prove illegal importation before the stones would be deemed contraband. Id.

Here, ebony wood is not *per se* illegal.  Because ebony wood from Madagascar *might* be legal, the U.S. Government's standing motion has no merit.   More importantly, as described below, the ebony wood at issue was legally exported, and its possession by Gibson is entirely legal.

---

[3] The portion of 2,507 Live Canary Winged Parakeets quoted by the Government states that the government need only make a prima facie showing that the property is unlawful. (Gov. Memo. at 15.)  The case was decided in 1988, and the legal standard at that time for forfeiture was a showing of probable cause.  The Civil Asset Forfeiture Act of 2000 changed the law to place upon the Government the burden of proving by a preponderance of the evidence its right to forfeiture of an asset. See 18 U.S.C. § 983(c)(1) (2000); United States v. $557,933.89,  287 F.3d 66, 76, footnote 5 (2nd Cir. 2002).

5

**2.     The ebony wood is legal as a matter of law because the Madagascar Government inspected the wood and approved its export.**

The uncontroverted proof establishes that the appropriate officials of the Madagascar Government inspected the wood at issue in this case, determined that it is "finished" within the meaning of their own laws, and expressly authorized the export of the wood.   The U.S. Government cannot second-guess the decision of a sovereign foreign government concerning the export its own natural resources. See World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1164-1165 (D.C. Cir. 2001) (refusing to second-guess the export decision of a foreign sovereign with regard to its own natural resources and noting that U.S. courts may not inquire "into the validity of the public acts a recognized foreign sovereign power committed within its own territory"); Bokkelen v. Gruman Aerospace Corp., 432 F.Supp. 329 (E.D. N.Y. 1977) (same); MOL, Inc. v. Peoples Republic of Bangladesh, 572 F. Supp. 2d 79 (N.D. Ill. 2003) (refusing to second guess foreign sovereign's regulation of its own wildlife).   As the World Wide Minerals court noted, "the right to regulate imports and exports is a sovereign prerogative." 296 F.3d at 1154.   Second-guessing such decisions disrupts international comity and interferes with the conduct of foreign relations. Id.

This is not a case of inaction by the Madagascar Government, nor is it a case where ebony wood was cut and shipped under cover of darkness without the knowledge of Madagascar officials.   Indeed, the U.S. Government contends that the ebony wood at issue was initially seized "in place" (meaning it was never moved from Thunam's facility) while the Madagascar Government determined whether it was legally harvested.   The U.S. Government deftly employs this and similar sound-bites to impugn the character of the wood supplier, but ignores that the Madagascar Government ultimately released the wood and expressly authorized its export.

6

According to the Madagascar Government's official files, in March 2009, Thunam went through a lengthy and well-documented government procedure involving at least 10 Madagascar Government officials, all of whom approved the export of the wood at issue. Thunam requested permission from the Madagascar Minister of Environment Forest and Tourism ("MEFT") for approval to export ebony and other woods. (Exhibit A, Declaration of Guy Shepherd ("Shepherd Decl."), ¶ 2.[4]) MEFT is the department of the Malagasy government responsible for regulating and approving the export of ebony wood. (Shepherd Decl.¶ 2.) The Madagascar Government inspected and approved the wood consistent with the following process:

1. Thunam submitted consolidated packing lists and invoices to the MEFT authorities describing the contents of three shipments of wood, each including ebony, that he wanted permission to export. The Regional Director of MEFT stamped and approved these.[5] (Shepherd Decl. ¶ 3 and pages 5-7, 8-10; Exhibit B, Translations, pages 1-13.)

2. On March 26, 2009, MEFT issued an official government record reflecting that, in accordance with the orders of the Regional Director of MEFT, two government agents inspected the ebony wood that Thunam desired to export. The report states that the ebony wood inspected in each of Thunam's shipments is "finished." (Shepherd Decl. ¶ 4 and page 11; Exhibit B, Translations, pages 14-15.)

---

[4] Gibson retained Guy W. Shepherd, who has been involved in importing and exporting goods from Madagascar for over 20 years, to investigate the wood at issue. As described in his declaration (Exhibit A), his colleagues visited the government offices located in the Districts of Antalaha and Vohemar, which are both in the Sava region of Madagascar, examined official Madagascar Government documents, and interviewed Madagascar Government officials who signed and stamped several of the documents related to the March 27, 2009, export of ebony wood products by Thunam. Mr. Shepherd's declaration includes certified copies of pertinent documents from the Madagascar Government, plus sworn statements from Madagascar officials.

[5] Translations of these and other pertinent documents are attached as Exhibit B.

7

3.     Based upon Thunam's request, the inspection performed by MEFT, and the approval of MEFT, the Regional Director of MEFT issued Thunam three export authorizations bearing the following numbers: No. 455-09/MEFT/SG/DREFT SAVA; No. 458-09/MEFT/SG/DREFT SAVA; and No. 461-09/MEFT/SG/DREFT SAVA.[6] (Shepherd Decl. ¶ 5 and pages 12-17; Docket Entry 5, pages 5-13.)  The Export Authorizations grant Thunam permission to export three shipments containing, among other things, a total of 1,340 packages of finished ebony wood products. (Docket Entry 5, 5-13.)  The second page of each Export Authorization states that it is based, in part, upon the inspection report above. Id.

4.     MEFT issued statements assessing export taxes and fees on each shipment and issued a receipt to Thunam after he paid the taxes and fees. (Shepherd Decl. ¶ 6 and pages 18-21, 22; Exhibit B, Translations, pages 16-25.)

5.     On March 27, 2009, the Malagasy customs authorities issued three customs declarations for Thunam's shipments, each reflecting that the shipment is intended for Theodor Nagel in Germany.  Box 31 of each declaration includes a description of the wood that expressly states that (1) the wood is finished and (2) the wood is going to be used for carpentry and other construction purposes:

Designation of Merchandise:

Other pieces of woodwork and carpentry for carved wood construction.  FINISHED EBONY ROSEWOOD AND FAHO.

---

[6] Theodor Nagel, the German company that sold the wood to Gibson, previously filed translations of these Export Authorizations with its verified claim. See Docket Entry 5.

8

(Shepherd Decl. ¶ 7 and pages 23-25; Exhibit B, Translations, pages 26-35) (emphasis in original).   In other words, the Madagascar authorities expressly recognized that the wood at issue would be cut, fitted, shaped, etc., after it left Madagascar.  Of course, consistent with Madagascar law, they classified the wood as "finished."

6.      Malagasy customs also issued a container loading statement for each of Thunam's shipments.  These loading statements are official government records acknowledging that the wood actually loaded into the shipping container complied with the documentation authorizing export.  Each loading statement is signed by the customs inspector who conducted the loading. (Shepherd Decl. ¶ 8 and pages 26-28; Exhibit B, Translations, pages 32-37.)

7.      The loading statements also bear the stamps and signatures of five Madagascar officials.  Each of these officials has provided Gibson with a sworn statement.[7] Each official re-affirms that each of Thunam's March 2009 shipments comported with the official documentation authorizing export. Further, each official attests that he would not have signed the loading statements if the wood in the containers had been illegal to export or had been illegally logged. (Shepherd Decl. ¶ 9 and pages 29-33;  Exhibit C.)

8.      Finally, the customs inspector issued a customs release note for each of Thunam's shipments indicating that the shipments were ready for export. The official's handwriting indicates that each shipment contained finished ebony. (Shepherd Decl. ¶ 9, pages 34-35; Exhibit B, Translations, page 38.)

---

[7] Originals of the statements are attached as Exhibit 9 (pages 29-33) to the Declaration of Guy Shepherd and translations are attached to this memorandum as Exhibit C.

9

The evidence is clear that the appropriate Madagascar government officials authorized the export of Thunam's ebony and that the customary procedures were followed. (Shepherd Decl. ¶ 10.) The appropriate customs authorities charged with monitoring export knew what the wood was (i.e., ebony intended for carpentry and woodwork), made an informed decision that it was "finished," and approved its export. Further, as Mr. Shepherd, who has 20 years of experience with Madagascar logistics can attest, if the wood had not been subject to legal exportation, or if Thunam had not had government authorization to export the wood, then one of the many Madagascar officials involved in the process would have prevented the shipments from leaving the country. (Shepherd Decl. ¶ 10.)

This evidence of legality is overwhelming. Although the U.S. Government claims "there is no indication that these alleged [export] authorizations related to the Madagascar ebony delivered to Gibson" (Gov. Memo. at 13), the U.S. Government ignores that Agent Seiler's affidavit filed in support of the search warrant specifically states that the seizure of Gibson's property concerns three shipments of ebony wood that left Madagascar on March 27, 2009. (Docket Entry 12.1, paragraph 15.) Consistent with this affidavit, each of the three Export Authorizations specifically states that the anticipated date of departure from Madagascar is March 27, 2009. (Docket Entry 5, pages 6, 9, 12.) Each of the three customs declarations is dated March 27, 2009; the loading sheet states the date of loading is March 27, 2009; and the customs release notes are dated March 27, 2009. (Shepherd Decl. ¶ 7 and Translations, pages 26-31 (Box A), pages 32-37 (second box), pages 38-39.) The U.S. Government has no basis for suggesting that these documents do not concern the wood at issue. Of course, Gibson does not bear the burden of proving anything about the specific wood that was seized. Rather, the U.S.

Government bears that burden. To date, the U.S. Government has not produced any piece of evidence that is directly related to the specific pieces of wood that it seized.

**3.     Even if the U.S. Government had the right to second-guess the Madagascar Government's determination that the wood was legal to export, that determination was reasonable and consistent with Madagascar law.**

Even if the U.S. Government could properly ask this Court to review the Madagascar Government's decision to authorize export of the ebony wood at issue, which it cannot, the decision of the Madagascar Government was an entirely reasonable interpretation of Madagascar law. The U.S. Government concedes, as it must, that Madagascar law permits the export of "finished" ebony wood products. In fact, Order No. 16.030/2006 lists nonexclusive examples of such ebony products that Madagascar considers "finished" for purposes of export. (Docket Entry No. 8-1, Page 3, Article 6.) That list expressly includes musical instrument parts such as the fingerboards at issue here. (Docket Entry No. 8-1, Page 3, Article 6.)

Gibson and the U.S. Government have offered competing interpretations of the musical instrument pieces specifically listed in the Order.[8] Nevertheless, the goods described in the Order are nonexclusive examples of finished goods. Order No. 16.030/2006 expressly says "etc." after the listed examples of musical instrument parts. (Docket Entry No. 8-1, Page 3, Article 6.) The Madagascar Government's determination that the pieces of wood at issue were finished for purposes of the Order was plainly reasonable.

This interpretation is consistent with the rest of the Order, despite the U.S. Government's argument that the fingerboards required further cutting and modification for use on guitars. Indeed, the very same argument could be made to block the export of Madagascar ebony

---

[8] The U.S. Government attempts to make a fine distinction between "fingerboard" and "fretboard." The reality, however, is that the terms are used interchangeably to refer to the same instrument part. See http://en.wikipedia.org/wiki/Fingerboard

11

construction materials, such as "casing/forms," "molding," "flooring," "border wood," "baseboards," and "bannisters," all of which are listed as "finished" goods that are legal to export despite the unremarkable fact that each such product typically must be cut, fitted, and applied to something else in order to be useful for its intended purposes. (Docket Entry No. 8-1, page 3.) For musical instruments, the other example is "piano keys," which, like fingerboards, must be combined with other parts and fitted and installed for final use. See also arguments set forth in Gibson's Reply in Supp. Mot. Dismiss, Docket Entry No. 17, pages 5-9.

This interpretation is also wholly consistent with the declaration from Madagascar customs, which expressly described the wood as "[o]ther pieces of woodwork and carpentry for carved wood construction. FINISHED EBONY ROSEWOOD AND FAHO. (Shepherd Decl. ¶ 7 and pages 23-25, Box 31; Translations, pages 26-35, Box 31). The Madagascar authorities recognized that the wood at issue would be cut, fitted, shaped, etc., after it left Madagascar, and consistent with the Order, they classified the wood as "finished."

Further, as the U.S. Government's argument makes clear, in making the "finished" good determination, the Madagascar Government must take into account the limitations of existing Madagascar manufacturing facilities. Simply put, a finished wood product from Madagascar may be significantly less refined than comparable products from more developed industrial countries. The U.S. Government concedes that the Madagascar manufacturing facilities are too primitive to do anything more to the fingerboards that Gibson purchased. (Docket Entry No. 31-1, page 3, ¶ 6.) It would be unfair to second-guess the Madagascar Government's determination of which Madagascar ebony wood products are "finished" for purposes of its own export laws simply because manufacturing facilities in the most developed nation on earth could produce more polished products than the relatively primitive Madagascar manufacturers.

Ultimately, the Madagascar Government's determination that the wood at issue is finished and may be exported under its own laws is reasonable given the language and intent of the law. It should not be disturbed.

**4.      The U.S. Government has not offered any admissible evidence.**

The U.S. Government's argument relies upon the Affidavit of Agent Kevin Seiler. Agent Seiler's statements are overwhelmingly inadmissible hearsay, if not double hearsay. For instance, as proof that fingerboards are not finished, Agent Seiler states that he has listened to a recording that some unidentified third party conducted with a former Madagascar official on the issue. (Docket Entry 31-1, ¶ 7.) He attests to what some other unnamed federal agent intended when that agent swore under oath that he was seizing "fingerboards." (Docket Entry 31-1, ¶ 4.) Agent Seiler attests that he watched a television news report that featured alleged footage of Thunam's Madagascar facility and that the facility featured in the news report appeared too primitive to produce what Agent Seiler considers finished fingerboards. (Docket Entry 31-1, ¶ 6.) Agent Seiler then attests to what unnamed "others" observed in Gibson's manufacturing facility. (Docket Entry 31-1, ¶ 11.) Similarly, in his prior affidavits, Agent Seiler attests that he read a transcript that some unnamed third party told him was the transcript of an interview with Roger Thunam. (Docket Entry 21-1, ¶ 16.) He also vaguely refers to other unnamed interviewers and cooperating parties who provided him with nonspecific information. (Docket Entry 21-1, ¶ 24; Docket Entry 3, ¶ 16.)      Agent Seiler also attests to other hearsay statements by third parties. (Docket Entry 21-1, ¶¶ 20, 21.)

Gibson has served discovery requesting further information about the individuals and documents mentioned in the affidavits. Obviously, such "proof" is inadmissible and cannot serve as the basis for taking Gibson's property. What is more shocking is that none of this

"proof" concerns the specific wood that left Madagascar on March 27, 2009, and that was seized by armed federal agents at Gibson's plant in November 2009.

**5.**     **<u>The U.S. Government's factual assertions are unsupported by its documentation.</u>**

Instead of producing any evidence—admissible or not—about the specific wood at issue, the U.S. Government distorts documents that are not pertinent. The U.S. Government attempts to convince this Court that Madagascar orders say something that they do not; that Gene Nix made statements about the wood at issue, which he did not; and that the U.S. Tariff laws somehow affect the interpretation of the Malagasy Orders regarding ebony wood, which they do not.

    *a.*     ***<u>Madagascar Order 003/2009 Has Nothing to Do with the Ebony Wood at Issue.</u>***

The U.S. Government's entire argument relies upon its assertion that Thunam's supply of ebony wood must have been illegal because Madagascar Order 003/2009 does not include the wood in its inventory table. (Gov. Memo. 7, 22.) For instance, the U.S. Government claims "[Andrew] Keck provided [Gibson employee Gene] Nix with a file that showed Thierry Body was the only person the Malagasy government had given the right to export ebony under special exception," and "in March 2009, by law Thunam had no legal stock of ebony." (Gov. Memo. at 7, 22.) The U.S. Government's authority for these statements is Madagascar Order 003/2009. The U.S. Government also broadly claims that this same Order is evidence that "Thunam's stock of ebony wood had been inventoried and declared illegal by the Madagascar Government." (Gov. Memo. at 13.)

Order 003/2009 provides absolutely no support for the U.S. Government's proclamations. The Order has nothing to do with either finished ebony or what the U.S. Government has decided to call "sawn" ebony. The title of Order 003/2009 states that the Order applies only to logs and

14

other *unsawn* wood in its raw, natural state: "Authorizing an extraordinary export of natural forest wood *in its raw state*." (Docket Entry 33.2, page 17, heading) (emphasis added). The terms of the Order make clear that it applies only to unsawn, raw wood: "Each of the operators mentioned in the table below shall be given an extraordinary authorization to export natural forest wood *in its raw state* in accordance with the quantities and types of rare wood that were inventoried . . . ." (Docket Entry 33.2, page 17, Article 1) (emphasis added). The table in the Order that inventories the wood refers to "logs" and "small pieces" of wood. (Id. at page 18.) Nothing in the table or the rest of the Order mentions sawn wood or finished wood such as that at issue.

By contrast, Order No. 16.030/2006 authorizes the export of "finished" ebony or rosewood; it does not allow the export of logs. Order 003/2009, upon which the U.S. Government relies, grants new, "extraordinary" permission to export logs and unsawn wood in its "natural state." Put another way, Order 003/2009 is a special exception to the rules set out in Order No. 16.030/2006, the latter of which permits the export of finished ebony and rosewood products such as the musical instrument parts at issue here.

No argument has been made that the ebony wood at issue consists of logs or unsawn wood. Even under the U.S. Government's position, the wood at issue was "sawn," thus taking it outside the scope of Order 003/2009. The U.S. Government's argument that Order 003/2009 somehow conclusively proves that the wood at issue is illegal is simply without merit.[9]

---

[9] The Government also broadly claims that "[a]ll legal ebony inventories which had been approved by the Madagascar Government had been exported prior to April 2009 . . . ." (Gov. Memo. at 21.) Again, the Government's citation is to Order 003/2009, which has no application to finished or sawn ebony. In any event, as noted above, the Madagascar Government gave Thunam export approval in March 2009, which was before the purported April deadline.

15

### b.    *Mr. Keck did not tell Gene Nix that ebony fingerboards are illegal.*

Ignoring the uncontroverted proof that the ebony wood at issue is legal, the U.S. Government attempts to use snippets from a Gibson employee's emails to create the misimpression that the employee, Gene Nix, understood that ebony from Madagascar is illegal. For instance, the U.S. Government wrongly claims that environmentalist Andrew Keck told Gene Nix that all ebony wood from Madagascar is illegal. In actuality, Mr. Keck told Gene Nix that ebony fingerboards are ***legal*** to export. (See Docket Entry 8-1, page 1, paragraph 1, and page 3, Article 6.)

The U.S. Government's brief also suggests Mr. Nix made the following comment in his emails: "there was a considerable stockpile of wood, including with Mr. Thunam, that had been provisionally seized pending investigations to determine its legality . . . ." (Gov. Memo. at 8-9.) Gene Nix did not make this statement. Rather, this quote appears in an email from Keck to Gene Nix, not from Gene Nix to Keck. (Docket Entry 33.3, bottom of page 1.) Moreover, the email specifically states that the wood that was "***provisionally*** seized pending investigation to determine its legality" was eventually determined to be legal and allowed to be exported: "The Minister was bitter and the government gave the OK for the wood to be exported." (Docket Entry 33.3, page 2, first paragraph.) Thus, the U.S. Government's "smoking gun" emails actually support Gibson and are wholly consistent with the fact that Madagascar Government inspected the ebony wood at issue and approved it for export in 2009.

### c.    *"Uncertified" wood is not illegal wood.*

The U.S. Government attempts to use other entries from Gene Nix's email to create a wholly new legal standard. The U.S. Government quotes Gene Nix's statement from his 2007 Trip Justification Report that "there are no certified sources of ebony at present." (Gov. Memo at

5.) The U.S. Government then draws the following conclusion: "if there are no certified sources of ebony, then Gibson's argument that finished wood is legal to import is irrelevant because the import of uncertified wood from Madagascar in finished or unfinished form is illegal." (Gov. Memo at 5.)

This conclusion is unfounded. First, the quotation that there are no certified sources "at present" is in a Trip Justification Report dated 2007. (Docket Entry 33, page 1, ¶ 2.) As explained in depth above, the Madagascar Government inspected and approved the ebony wood at issue in March 2009. The suggestion that the 2007 Report—which was prepared before Mr. Nix even went to Madagascar—has anything to do with wood the Madagascar Government approved in 2009 is preposterous.[10]

More importantly, Gene Nix's comments about "certification" in his Trip Report have nothing to do with the legality of ebony wood at any point in time. As is clear from the face of the Report, the reference to "certified sources" is about "FSC certified" sources. The FSC—or Forest Stewardship Council—is a private, third-party service that enters into contracts with landowners to assess the landowners' forest management. See http://www.fscus.org/faqs/what_is_certification.php. FSC wood is wood that has been harvested in a sustainable manner and has met the highest international standards for harvest management. FSC certification, though, is not a legal requirement under any law. The U.S. Government's sleight of hand to equate FCS certification with the legality of wood under Madagascar law

_____

[10] Gene Nix, representatives of other guitar manufacturers, and Greenpeace went to Madagascar in June 2008. The trip was part of Gibson's ongoing efforts to explore and support legal, sustainable sources of wood. (See Gene Nix's description of trip at Docket Entry 33.8.) There was nothing nefarious or even secret about the trip.

simply underscores the dearth of pertinent, admissible evidence that the U.S. Government actually has to support its claim.[11]

In fact, contrary to the U.S. Government's statements, the Trip Report points out that "Madagascar ebony is not included on the IUCN Red List." (Docket Entry 33, ¶ 4.)    In other words, the International Union for Conservation of Nature and Natural Resources does not even consider ebony wood from Madagascar a threatened species.  Ebony wood is also not on CITES or any other list of endangered species.  The U.S. Government's suggestion to this Court of the contrary finds no support in any domestic or international law.

> ### d. *The U.S. Government has presented no proof that Thunam engaged in any wrongdoing with regard to the specific wood at issue.*

The U.S. Government boldly claims that Thunam was involved in a Madagascar legal case that resulted in a guilty verdict for some unspecified conduct. (Gov. Memo, footnote 11.) The U.S. Government's support for this accusation is hearsay in the form of some third party investigative report.  Assuming that the report is admissible proof of anything, the report actually states that Thunam paid an out of court settlement in late 2008, which yet again was before the Madagascar Government inspected and approved the actual wood at issue in 2009. (Docket Entry 31-2, page 22.)   The environmental report also opines, without any legal citation whatsoever, that paying a settlement "assumes the guilt of the accused." (Docket Entry 31-2, page 22.)  The U.S. Government has not produced an actual court opinion explaining anything

---

[11] Similarly, the Government seizes upon Gene Nix's use of the word "grey market" and deems it a description of illegal goods.  Again, the email (Docket Entry 33.3) is about FSC certification of sustainable sources, not the legal classification of the wood at issue.  Even if the phrase did reference legality—which it does not—in normal parlance, black market goods are illegal; grey market goods are legal. See http://en.wikipedia.org/wiki/Grey_market

about the case, and it certainly has not established any link between the purported case and the specific wood at issue.

     *e.*     ***The tariff classification of the wood under U.S. law has nothing to do with Madagascar law.***

     The U.S. Government claims that the wood at issue must be unfinished under Madagascar law because Hunter Trading (which is not even a party to these proceedings) declared the wood as sawn ebony under the United States Tariff Schedule and because the U.S. Government issued tariff rulings about other pieces of wood at some point in time. (Gov. Memo at 8-9.) U.S. Customs declarations and documents are irrelevant and have no meaning under Madagascar law. Further, the U.S. Government's choice to classify fingerboards as sawn ebony in various tariff rulings under U.S. law has nothing to do with the Madagascar Government's decision to define fingerboards and other musical instrument parts as "finished goods" in its own 2006 Order. The U.S. Government's tariff rulings also have nothing to do with the Madagascar Government's decision to declare that the specific ebony wood at issue in this case is "finished" and legal to export.

**Conclusion**

     The undisputed proof in this case is that the Madagascar Government inspected the ebony wood at issue, determined that it is "finished" under Madagascar law, and approved the wood for export. No fewer than 10 Madagascar officials participated in the process of approving the wood. The Madagascar Government collected taxes on the export of the wood. The wood is legal.

     For the foregoing reasons, the U.S. Government's motion to strike and its entire case are devoid of merit. Gibson requests that the Court deny the U.S. Government's motion to strike,

19

dismiss this unfounded forfeiture proceeding, order the immediate return of Gibson's property, and  award Gibson all of its costs and fees pursuant to 28 U.S.C. 2465(b).

Respectfully submitted,

/s/ Tim Harvey
Steven A. Riley (BPR # 6258)
Tim Harvey (BPR # 021509)
W. Russell Taber, III (BPR # 24741)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37202
(615) 320-3700 – telephone
(615) 320- 3737 – facsimile
sriley@rwjplc.com
tharvey@rwjplc.com
rtaber@rwjplc.com

*Attorneys for Gibson Guitar Corp.*

## CERTIFICATE OF SERVICE

I certify that, on July 15, 2011, a true and correct copy of the foregoing has been served upon the following Filing Users through the Court's Electronic Filing System:

Jerry E. Martin
United States Attorney for the
Middle District of Tennessee
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
jerry.martin2@usdoj.gov

Debra Teufel Phillips
United States Attorney for the
Middle District of Tennessee
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
deb.phillips@usdoj.gov

*Attorneys for the United States of America*

Alexander Fardon
315 Deaderick Street, Suite 1800
Nashville, TN 37238-1800
daf@h3gm.com

*Attorney for Theodor Nagel GMBH & Co KG*

/s/ Tim Harvey
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾