IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL NO. 3:10cv00747 |
| v. ) | |
| ) | JUDGE HAYNES |
| ) | |
| EBONY WOOD IN VARIOUS FORMS, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S REPLY TO CLAIMANT
GIBSON GUITAR CORP.'S RESPONSE TO MOTION TO STRIKE

Plaintiff responds briefly to clarify certain issues addressed in Gibson Guitar, Corp.'s ("Gibson") response to the Plaintiff's Motion to Strike [Gibson's claim] for Lack of Standing after a Hearing.

I. *The export of the ebony wood was in violation of Madagascar law.*

*a. Finished for the purpose construction material does not mean finished for a musical instrument or part.*

Gibson now asserts that the Defendant Property, consisting of Madagascar ebony wood in various forms, is not contraband because Malagasy customs authorities approved the export of the Madagascar ebony wood (which ultimately comprised the Defendant Property) when exported from Madagascar in March 2009. (D.E. 40: Gibson Response, 8 - 10). However, the approval was for the export of a finished product for "carpentry and other construction purposes." (D.E. 40: Gibson Response, 8). Therefore, contrary to Gibson's argument, the Madagascar ebony wood was illegally exported because the Malagasy authorities were defrauded about the intended final use of the

1

Madagascar ebony wood. The facts alleged by Gibson in its response demonstrate Thunam's knowledge of the actual illegality of the shipment and the fraud he perpetrated on the Malagasy government in order to export contraband ebony wood blanks from Madagascar.

Malagasy Inter-Ministerial Order No. 16.030/2006 ("Order 16.030/2006), Article 6 states that "Finished wood signifies any wood that has been shaped and processed to its final use and is no longer capable of being modified..." (D.E. 33 - 2: Order 16.030/2006). Article 6 lists the specific final uses for "finished wood," to include "Model", "Construction material", "Furniture", "Crafts", "Musical instruments", "Prefabricated houses mainly of wood," and "Wood packing material." *Id.* Article 6 further provides examples for each category of use. For musical instruments the examples are "piano keys, guitar fret board, etc." *Id.* For construction material the examples are "Window rod, baluster, shingle, molding plane, pelmet, formwork, stair, window, neck, molding, parquet, barge board, plinth, door, ramp, rod, window shutter, batten, etc." *Id.* The Declarations relied upon by Gibson indicate both by description and by tariff code that the Madagascar Ebony exported from Madagascar by Thunam in March 2009 was in the form of construction material. However, the Ebony, as it arrived in Nashville, was actually in the form of blanks intended to be manufactured into guitar fretboards.

Gibson presents the affidavit of Guy Shepherd to explain the exportation process; however Shepherd does not address the false tariff code asserted on the Declarations. (D.E. 40-1: Shepherd Affidavit)(D.E. 40-7: Declarations 1,2,3 at ¶ 33. Nomenclature tarifaire). Neither does Gibson's response address the false tariff codes. The declarations prepared for the export from Madagascar accompanying the Madagascar ebony wood provide a Harmonized Tariff Code of the United States ("HTC") of series "4418 9010." Id. The 4418 series applies to "Builders' joinery and carpentry

2

of wood, including cellular wood panels and assembled flooring panels; shingles, and shakes." (Exhibit 1: HTC , 27 - 28). HTC 4418.90 applies to a subcategory of "other" within the larger category of wood used by guilders. (Exhibit 1: HTC, 28). Subcategories under 4418.90 include "drilled or notched lumber studs," "wood flooring," arches, roof trusses, and "prefabricated partitions and panels for buildings." (Exhibit 1: HTC, 28). Thus, the declarations of HTC 4418 9010 are completely unrelated to both the form and the actual intended use of the ebony blanks found at Gibson. When the Defendant Property entered the United States, Nagel via Hunter Trading Corporation declared it under HTC series 4407 (Wood sawn or chipped lengthwise, slice or peeled, whether or not planed, sanded or end-jointed...). (Exhibit 2: Gibson Supplemental Responses, Gibson Forfeiture 000034 through 000041)(Exhibit 1: HTC, 7).

Gibson is clear as to the intended use of the Madagascar ebony wood - to use as guitar fingerboards. (Exhibit 2: Gibson Supplemental Responses, 4). In Gibson's Memorandum in support of its Motion to Dismiss, Gibson claims that the the Lacey Act phase-in requirements do not apply to the Madagascar ebony wood because "parts of musical instruments are covered in [Harmonized Tariff Schedule of the United States] heading 9209." ( D.E. 8: Memorandum, 15). Yet, neither exporter Thunam nor importer Nagel record HTC Series 9209 anywhere on the documentation (including the declarations) in relation to the Madagascar ebony wood, and Gibson has acknowledged that "[g]enerally, when the fingerboards[1] arrived, Gibson would have measured the moisture content of the fingerboards, and most of them would have been kiln dried to adjust the moisture content. Gibson would have radius molded the boards and shaped, trimmed and polished

---

[1] Gibson's uses the term "fingerboards" for what the Plaintiff alleges is blanks or sawn wood which are contained within the Defendant Property.

3

the fingerboards to fit with other precision parts used by Gibson as part of manufacturing unique Gibson guitars. Gibson intended to add frets and other guitar parts, such as a body and peghead, to make a complete guitar. Specific additions to the fingerboard would depend on the specific type of guitar being made with the fingerboards." (Exhibit 2: Gibson Supplemental Responses, 4).

The Malagasy law distinguishes between the final use for finished construction materials and finished musical instruments. This clear distinction reflects the intention of the Malagasy government to enhance and support the Malagasy economy and environment by requiring purchases of finished musical parts and instruments (made from certified wood) from its merchants and factories. Article 6 of Order 16.030/2006 and Article 3 of Malagasy Inter-Ministerial Order No. 10885/2007 ("Order 10885/2007") both reflect that "finished wood signifies any wood that has been shaped and processed to **its final use** and is no longer capable of being modified" and both Orders designate "**specifically**" the different final uses such as construction material and musical instruments. The final purpose of the ebony seized from Gibson is for the manufacture of guitars or parts of musical instruments which Gibson wished to finish to meet their own standards and not that of Madagascar's. Gibson also acknowledges that any construction of a guitar or fret board in Madagascar would not meet Gibson's quality. (D.E. 40: Claimant's response, 12). Gibson did not purchase finished guitars or fret boards from Madagascar even though such a purchase would support the struggling economy of Madagascar and even though such items were available.(D.E.33-4: Review of trip program, 2 and photos Appendix 8,9).

"Finished" for the purposes of a specific construction use, does not equate to finished for use in a musical instrument- Gibson would have to take that same piece of wood and convert it to use in a musical instrument by drying, cutting, shaping, notching, and otherwise altering and

4

modifying it, and the wood could not be considered "finished" for the purposes of the musical instrument use until those additional processes had occurred.

The facts presented by Gibson's submission of the declarations lead to the conclusion that Thunam deliberately misled Madagascar customs officials as to the nature of the ebony included in the March 2009 shipments. Thus, the issue is not a question of the acts of the State but the illegality of the acts of Thunam. This conclusion does not render the Defendant Property legal or non-contraband. Allowing parties to reclassify exports at will, as most convenient for getting those exports out of the country, would undermine the regulatory system set up to protect Madagascar's resources, including Ebony. Smuggling is not just sneaking wood out under cover of darkness, but also sneaking it out under cover of false representations about its use.

A second conclusion which may be gleaned from Gibson's argument is that the permits and authorizations submitted by Gibson from the March 2009 export of ebony wood from Madagascar do not pertain to the seized Defendant Property. If this is the case, then Gibson has not complied with the Special Interrogatory requests specific to Gibson's interest in the Defendant Property. It must then be assumed that the property was in fact smuggled into the United States with no documentation in violation of Madagascar law.

Special Interrogatory No. 2 sought: "specific details as to [Gibson's] interest in each items of Defendant Property... As to each item of Defendant Property, provide the following information:

> A. All **DOCUMENTS** and records relating to where the item and any unit thereof originate, including where it was grown (i.e., the country of origin, where it was harvested, and what if any manufacturing was done to it in its country of origin.

Gibson objected to the interrogatory as overly broad and beyond the scope of discovery permitted by Federal Supplemental Rule of Civil Procedure G(6)(a), which authorizes only "special

5

interrogatories limited to the claimant's identity and relationship to the defendant property." (Exhibit 2: Gibson Supplemental Responses, 3). This objection to Interrogatory 2, when combined with Gibson's continual referral to the government's failure to identify the "specific wood" requires clarification and a response from Gibson. (D.E. 40: Gibson Response to Motion to Strike, 3, 11, 14. Gibson's response to Interrogatory No. 3 of Plaintiff's First Set of Special Interrogatories which requested Gibson to "IDENTIFY and provide all DOCUMENTS, files, records, communications of all persons employed by Gibson in all supervisory levels and employees regarding the export, import, interstate transport, purchase, manufacturing and sale of the Defendant Property and as to ebony of the Diospyros species" was an objection to the interrogatory as seeking information about wood products that predate the applicability of the Lacey Act, but advised that "Gibson is producing herewith the invoices and purchase orders related to the September 2009 shipment of fingerboards identified in the Government's pleadings, and the Hunter Trading documents reflecting when the fingerboards were moved from Red Arrow to Gibson, all of which evidence the contract pursuant to which Gibson purchased the fingerboards at issue in this case.). Gibson is also producing herewith documents reflecting money transfers to Theodor Nagel in 2009 and 2010. Pertinent export documents are in the court record at Docket Entry 5 and were previously served on the U.S. Attorney in this matter in September 2010." (D.E. 31-3: Gibson Response to First Special Interrogatories 8,9). As noted in earlier pleadings, the previous service was on Elinor Colbourn, Senior Trial Attorney in the Environmental Crimes Section, Environment and Natural Resources Division of the United States Department of Justice Criminal Division in Washington D.C. and not the undersigned (D.E. 20: Government Memorandum, 2) (D.E. 4: Gibson claim).

      Gibson responses obfuscate whether or not they have provided invoices, purchase orders, or other documentation which supports their relationship to the Defendant Property and appear to

6

assert that they do not intend to do so. If this case is not stayed, Plaintiff will file a motion to compel responses to the Special Interrogatories. Plaintiff has also requested stipulations from Gibson which could, if agreed to, resolve this issue.

### *b. The Madagascar Government did not approve Thunam's seized ebony for exportation.*

Gibson asserts that the email from Andrew Keck to Gene Nix, dated February 25, 2009 supports an approval for export of Thunam's seized ebony. (D.E. 40: Memorandum, 14). Gibson asserts "that the wood that was 'provisionally seized pending investigation to determine its legality' was eventually determined to be legal and allowed to be exported: 'The Minister was bitter and the government gave the OK for the wood to be exported.'" (D.E. 40: Gibson response, 16). However, missing from the excerpt quoted by Gibson is an important preface to the "Minister's decision" which makes it clear that Thunam's wood was only part of the seized wood, and that after much effort was made to quantify all the wood (including stocks sitting in other company yards), the Minister's decision to allow export of some wood did not refer to Thunam's seized wood. (D.E. 33-3: 2-25-2009 Keck email, 1,2). The email went further: "Attached is a file that shows you who had the right to export, under this special exception, rosewood and ebony, in both roundwood and processed form." (D.E. 33- 3: 2-25-2009 Keck email, 2). The attachment to the email reflected that Thunam was not approved to export any quantity of ebony, and that only Thierry Body was permitted to export ebony. (D.E. 33-3, 5 and English translation, 9).

Plaintiff requests that the Gibson e-mails found at Docket entries 33-1, 33-3 and 33-8 be unsealed to provide a full and fair review of the entire email contents and to prevent any further accusation by Gibson that the "U.S. Government has selectively edited a Gibson employee's emails

7

to create the illusion of some nefarious ulterior motive."(D.E. 40: Memorandum, 2)[2].

## II. *The Act of State Doctrine does not apply*

Gibson asserts that Plaintiff can not question the exportation documents. Gibson is incorrect. The court is free to question the validity of paperwork in conjunction with the published pre-coup laws of Madagascar. The Act of State Doctrine does not apply where the United States does not recognize a government. In other words, the acts of an unrecognized government done within its own territory may be examined with regard to their validity by United States courts. *Williams v. Bruffy*, 96 U.S. 176 (1878); *The Maret*, 145 F.2d 431 (3d Cir. 1944); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, *cert. denied* 342 U.S. 816 (1951); *Estonian State Cargo & Passenger S.S. Line v. United States*, 116 F.Supp. 447 (Ct. Cl. 1953). In this case, the U.S. Department of State ceased to recognize the government of Madagascar after a coup on March 17, 2009. The current regime in Madagascar remains unrecognized by the United States. Most of the paperwork provided by Gibson was completed and/or signed on or after March 24, 2009.

Additionally, it should be noted that even the coup regime, in September 2009, recognized there was a problem with compliance of the law and issued a Communiqué reaffirming the illegality of shipments such as the one received by Gibson. (D.E. 33-2: September 17, 2009 Communique).

Further, the Harmonized Tariff Code is generally universal and is a "multipurpose international product nomenclature developed by the World Customs Organization ("WCO"). http://www.wcoomd.org/home_hsoverviewboxes_hsccd.htm (last viewed August 26, 2011). (Exhibit

---

[2] Plaintiff filed certain documents under seal in support of its motion to strike for lack of standing, pending an opportunity for Gibson to comment and respond as to whether the documents should be unsealed. (D.E. 32:Motion to seal). Gibson responded that "many of the documents (without specifying which) are Gibson's business records... and should remain under seal."(D.E. 32: Gibson response to seal).

3: World Customs Organization, 1). Madagascar applies the Harmonized System. Id., 2.

### III. Banned ebony wood is Contraband per se

No different than "illegal" narcotics or an unregistered still, Madagascar ebony wood which has been banned from export by Malagasy law since 2000 by Inter-Ministerial Order 11.832/2000, and banned from harvesting since 2006 by Inter-Ministerial Order 16.030/2006 is contraband per se. The proof will show that the Madagascar ebony wood Gibson purchased came from Thunam, who had no legal certified sources of ebony and therefore all of his Madagascar ebony is contraband per se. In fact, there was no legal certified wood available after 2006. The fact that the Madagascar ebony wood imported into the United States after its exportation from Madagascar brings it within the purview of the Lacey Act. However, the exportation of the contraband, and the fact that Madagascar officials were deceived through the use of false declarations regarding the nature of the wood, does not change the *contraband per se* nature of the wood.

Gibson argues that the facts set forth in Agent Seiler's affidavit are hearsay and then requests that the matter be heard on the pleadings, even though Plaintiff has sought a hearing pursuant to Rule G(8)(c)(i)(B) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Plaintiff has asked for a hearing in order to allow the court to determine the credibility of the witnesses. Plaintiff has obtained a copy of the audio interview with Gerard Rambeloariso, Former Madagascar Director General of Forests from 2007 - 2009 recorded on May 23rd, 2011, and a copy of the Channel Four News Report referenced in Agent Seiler's affidavit at Docket entry 31-1, and has filed a motion to manually file these recordings with the Court.

## IV. *Gibson lacks Standing - a threshold issue*.

Gibson asserts it "might" have a colorable interest in the Madagascar ebony wood in various forms ("Defendant Property") and therefore it should be granted standing. Plaintiff asserts that Gibson lacks standing to contest this forfeiture action because the Madagascar ebony wood is contraband and illegal to possess. "[N]o person may assert an ownership interest . . . in contraband or other property that is illegal to possess" and the government shall not be required to return such property. 18 U.S.C. §§ 983(d)(4), 983(a)(1)(F). Claims to the Defendant Property are not within the zone of interests Congress seeks to protect. Id.; see also U.S. v. Real Property Located at 730 Glen-Mady Way, 590 F. Supp.2d 1295 (E.D. Cal., 2008) (persons excluded from zone of interest by statute do not have standing to contest forfeiture).

In order to determine this threshold issue, and to preserve the Court's and the parties resources, Plaintiff has requested, pursuant to Rule G(8)(c)(i)(B) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, for a hearing, to allow the Court to determine the credibility of the witnesses, the admissibility of the evidence and to make final determinations of facts regarding Plaintiff's motion to strike the claim of Gibson.

Respectfully submitted,

JERRY E. MARTIN
United States Attorney

s/ Debra Teufel Phillips
Debra T. Phillips (BPR 011706)
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151

Attorneys for the United States of America

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, notice was mailed by regular U.S. Mail to:

Steven Allen Riley
Timothy G. Harvey
W. Russell Taber, III
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37203

Alexander Fardon
Harwell, Howard, Hyne, Gabbert, and Manner
315 Deaderick Street, Suite 1800
Nashville, TN 37238-1800

By: /s Debra Teufel Phillips
DEBRA TEUFEL PHILLIPS